No. 3245.—SUCCESSION OF ALEXANDRE LABRY, deceased—On Opposition to Tableau of Administrator.

Prior to the adoption of the constitution of 1868, the heirs of a deceased party had secured to them by law a tacit or legal mortgage on the property of the tutor or tutrix superior to all other mortgages of subsequent date. The executing of a bond for the faithful administration of the tutorship fixed the date at which the rights of mortgage attached to the property of the tutor in favor of the heirs; and a judgment of the court recognizing the mortgage rights in favor of the heirs, which omitted to fix the date at which the mortgage attached, did not thereby change or supersede the date as fixed by the bond. The recording of the tutor's bond, therefore, before the first of January, 1870, in pursuance to the provisions of the act of 1869, renewed and perpetuated the tacit mortgage which existed prior to the adoption of the constitution of 1868, without reference to the judgment against the tutor on the bond.

The act of 1869, which provides a mode of registry for all mortgages, which, before the adoption of the constitution of 1868, were not required to be recorded, makes no distinction in the mode of recording those mortgages which existed at the time of the passage of the law, and those which came into existence after that period.

A conventional mortgage, which only has existence as a mortgage from the date of registry, can only date and take rank from that period.

APPEAL from the Seventh Judicial District Court, parish of Pointe Coupée. *A. Bouanchaud*, Parish Judge. *T. H. Hewes, John II. Ilsley, Cooley & Phillips, A. Provosty* and *S. J. Powell*, for opponents and appellants. *A. L. Mahondeau*, for appellees.

TALIAFERRO, J. The litigating parties in this case contest each other's claims to priority of mortgage right upon the proceeds of mortgaged property insufficient to pay all their debts against the succession. The administrator filed a tableau of distribution, which was opposed by Mathilde Laurans, whose claim to legal mortgage was postponed to the legal mortgage of Alexandre, Alexandrine and Joseph S. Labry, heirs of the decedent, Alexandre Labry. A. Miltenberger & Co. opposed the pretensions of these parties as unfounded, setting up their special mortgage as having priority over all others. After hearing these oppositions, the Parish Judge amended the tableau by allowing the claim of Joseph Severin Labry for $3880 33; with legal mortgage, to take effect from the twenty-first of February, 1848. Alexandre and Alexandrine were awarded each a like sum, with judicial mortgage, to take effect from the twenty-first of December, 1866. The claim of Mathilde Laurans was allowed, but without mortgage. A. Miltenberger & Co. were ranked as creditors, having special mortgage dating from the second of April, 1861, for the sum of $9470 20. From the judgment homologating the tableau as thus amended, all the parties, except Joseph S. Labry, have appealed.

The wife of Alexandre Labry, and mother of the three heirs—Alexandre, Alexandrine and Severin Labry—died in the year 1848. An inventory and appraisement was then made of her succession, and the surviving husband became the tutor of the minor children. An abstract from this inventory was recorded in the mortgage office of the parish of Pointe Coupée, in October, 1869, with the view of preserving

46

the legal mortgage, which these heirs held on the property of their tutor. Two of these heirs, Alexandre and Alexandrine, brought a suit against their father and former tutor for an indebtedness growing out of the tutorship, and obtained judgment against him on the twenty-first of December, 1866, recognizing their legal mortgage, but without giving it any date. The prescription of four years was pleaded against the claims of all three of the heirs on the alleged ground that four years had elapsed after they obtained the age of majority before they instituted proceedings for a settlement of their tutorship claims. Alexandre Labry, in 1851, became the tutor of Mathilda Laurans, one of the litigants, and executed his bond as her tutor on the twenty-fifth of November, 1851. This bond was duly recorded in the proper office before January, 1870, in order to preserve her legal mortgage. We find in the record a petition filed on the twelfth of December, 1861, by the under tutor of Mathilde, setting forth that her tutor had resigned, and prayed for the convocation of a family meeting to select a successor. The meeting, under an order of court, assembled on the twentieth of December, 1860, and advised the appointment of John Laurans, who was appointed and confirmed as tutor to Mathilde, who gave bond on the twelfth of January, 1861, Alexandre Labry, the former tutor, signing the bond as surety. John Laurans died in 1862. On the thirty-first of August, 1865, A. Provosty presented a petition setting forth the decease of Laurans, and representing himself as nearest of kin in the collateral line, prayed to be appointed tutor to Mathilde. He was appointed accordingly on the same day. Mathilde was emancipated by order of court on the fifth of April, 1866. Provosty, the last tutor, died since the commencement of these proceedings. There is nothing to show that Alexandre Labry ever rendered an account of his tutorship of Mathilde Laurans, and nothing to show that either Laurans or Provosty ever rendered an account. No written resignation or declaration in writing by Alexandre Labry is produced, showing that he resigned his office of tutor to Mathilde Laurans. It is contended on her part that none of the proceedings taken during her minority, affecting her rights, have released the property of Labry from the effect of her legal mortgage to secure his indebtedness to her as her tutor. Within the proper time after her emancipation she proceeded against the administrator of Labry, who died in 1869, for the rendition of an account. The tableau over which the parties are contending seems to have been presented under an order provoked by her.

The opponents of the Labry heirs have failed to establish against them the plea of prescription. We think the Judge *a quo* erred in allowing two of those heirs, Alexandre and Alexandrine, only a judicial mortgage to take effect from the twenty-first of December, 1866. It is true the judgment rendered in their favor against their former tutor,

while it accords to them a legal mortgage against his property, does not fix the date from which that legal mortgage took effect; but this omission is cured by the recording in the mortgage office an abstract from the inventory and appraisement of their mother's estate, as required by the act of 1869, prescribing the manner of preserving and continuing in force legal or tacit mortgages. Their right to a legal mortgage, dating and taking effect in 1848 on the property of their tutor, was preserved by complying with the requirements of the act of 1869, that right was not lost by the institution of the suit and the consequent judgment obtained against their tutor in 1865. By recording that judgment they acquired a judicial mortgage in addition to their legal mortgage.

We think there was error in the judgment, also, in placing Mathilde Laurans on the tableau as an ordinary creditor for the amount of her claim without mortgage right. Alexandre Labry, Sr., was, as we have seen, appointed her dative tutor in 1851, and gave bond and security as required by law. To preserve her lien or legal mortgage she recorded, prior to the first of January, 1870, her tutors' bond, and this, we think, was sufficient. The act of the Legislature of March 8, 1869, providing the mode of preserving legal mortgages is, in several of its sections, not free from ambiguity and even obscurity; yet, taking it in its entirety, we think its purpose was accomplished. The sections two, eight and eleven, in connection, we think, warrant our conclusion that the recording of the bond suffices. Section two directs prospectively that before a tutor shall be appointed, the bond of such tutor shall be recorded? What is the object of the Legislature by this enactment? Plainly that the bond recorded shall operate as notice of the minor's legal mortgage. Then why should not the recording of a tutor's bond, which was given before the adoption of the constitution of 1868, operate as notice of a legal mortgage, existing from the date of the bond, provided that in this case the bond be recorded before the first of January, 1870? The act in question was passed in conformity with the direction given by the one hundred and twenty-third article of the State constitution, and this was " to provide, by law, for the registration of all mortgages and privileges." Legal mortgages, existing in favor of minors before the adoption of the constitution of 1868, were to continue to exist if recorded before the first of January, 1870. The Legislature was required to provide by law for the recording of all mortgages and privileges. Then it was incumbent upon the Legislature to provide for the recording of that class of mortgages which, prior to January 1, 1870, existed by operation of law without being recorded. The legal mortgage of minors before January 1, 1870, had the same character that mortgages of that kind, to come into existence after that period, were to have. They had all to be recorded to have

effect—those in existence before January, 1870, were to be recorded before that time, and those springing into existence afterwards as they arose. Hence, the method adopted for recording applies as well to minors' mortgages that existed prior to January, 1870, as to those which were to originate subsequently. Minors' mortgages, in the case of natural tutors, are to be recorded by registering in the proper office abstracts or certificates showing the amount of inventory. In case of dative tutorship by recording the tutor's bond.

There was then no reason that there should be one method for recording minors' mortgages that existed before 1870, and another method for recording the same kind of mortgages that were to have their origin after that period. The article one hundred and twenty-three of the constitution recognized no distinction, and did not authorize the Legislature to make any in the manner of recording mortgages of the same class, whether existing prior to January 1, 1870, or to exist afterwards.

The ground assumed by the opponents of the claim of Mathilde Laurans that Alexandre Labry, her tutor, resigned his trust as her tutor, that other tutors succeeded him, and to them she must look for redress, can not be maintained. It is not shown that he ever resigned, and if he did, it is not pretended that he ever made any settlement of his accounts. Assuming that circumstances existed which authorized or excused him from a further discharge of his duties as her tutor, he still continued bound to render an account of the tutorship, a duty which he never performed. It is shown that large amounts went into his possession belonging to the then minor under his charge. The appointment of Laurans, and afterwards Provosty, as her tutor, by no means released Labry from accountability.

The tableaux as first presented in the Parish Court gave, in our opinion, the proper rank of the several creditors by mortgage and privilege, and we think it should assume its original form.

It is therefore ordered, adjudged and decreed, that the judgment of the District Court be annulled, avoided and reversed. It is further ordered, that the tableau of the administrator be amended by placing thereon the heirs of Alexandre Labry, viz: Alexandre, Alexandrine and Joseph S. Labry as creditors, with legal mortgage, for $14,184 05 to date and take effect from the twenty-first of February, 1848. Next, that Mathilde Laurans be recognized as a creditor, with legal mortgage to date and take effect from the twenty-fifth of November, 1851, for the sum of $9151 92. Third—That A. Miltenberger & Co. take rank with special mortgage for $9470 to date and take effect from the second of April, 1861, and that, as thus amended, the tableau be homologated and confirmed, the costs to be paid by the succession.

HOWELL, J., *dissenting.* I am unable to concur in the opinion of the majority of the court, that the recording of a tutor's bond, executed prior to the adoption of the constitution of 1868, preserves the mortgage in favor of the minor.

I find nothing in sections two, eight and eleven, of act No. 95 of 1869, which authorizes or directs the recording of such bonds, or gives the recording of them such effect. The bonds which are to be recorded are those given by tutors appointed after the passage of the law; and it is a well settled doctrine that we can not extend the effect of the registry of mortgages or laws providing for registry by implication or inference. It may be a legislative omission, but we can not, I think, supply the omission.

Rehearing refused.